**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| RONALD BELL, NOLAN STALBAUM, STACEY BELL, and SHEILA BELL, | ) ) ) ) |
| Plaintiffs, | ) ) Case No. 10 C 3263 |
| v. | ) ) ) Magistrate Judge Morton Denlow |
| VILLAGE OF STREAMWOOD, JAMES MANDARINO, RANDALL HART, MARY SACZAWSKI, MATTHEW McLEAN, PAUL PETRICK, ALEX JOZEFOWSKI, and Other Unknown Streamwood Police Officers, | ) ) ) ) ) ) ) ) ) ) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

Before the Court is Plaintiffs' motion to compel Ryan Ruthenberg's deposition testimony. The motion raises a question of first impression regarding whether an employee-union representative privilege should be adopted as a matter of federal common law in connection with a federal civil rights lawsuit. Plaintiffs argue that Ruthenberg improperly refused to answer questions posed at his deposition. According to Plaintiffs, counsel for Defendants improperly objected to virtually all substantive questions in the deposition, asserting a combination of evidentiary privileges including an Illinois statutory union representative privilege and the attorney-client privilege. Ruthenberg and Defendants

contend that the assertion of these privileges was proper. For the reasons explained below, the Court grants Plaintiffs' motion to compel further testimony from Ruthenberg.

## I. BACKGROUND FACTS

In this lawsuit, Plaintiff Ronald Bell accuses Defendant James Mandarino, a former Streamwood police officer, of employing excessive force against him during a traffic stop on March 28, 2010. Mandarino's dashboard camera recorded him striking Bell repeatedly with a baton.

Ryan Ruthenberg is a Streamwood police officer and Mandarino's former union representative. Plaintiffs suspect that Ruthenberg had discussions with Mandarino about the March 28, 2010 incident, so they sought to depose him. At his June 13, 2011 deposition, Ruthenberg described the role of a union representative as a liaison between the police officers and the union. When asked whether he had any involvement with Mandarino regarding the March 28, 2010 incident, Ruthenberg's attorney asserted the Illinois union agent privilege and Ruthenberg refused to answer the questions. Ruthenberg refused to discuss how many conversations, if any, he had with Mandarino or the circumstances of those conversations. Ruthenberg also asserted attorney-client privilege, to the extent an attorney was present for any of the conversations between Ruthenberg and Mandarino. At the same time, Ruthenberg refused to disclose whether he ever talked to Mandarino with an attorney present. Plaintiffs now seek to compel further deposition testimony from Ruthenberg.

## II. DISCUSSION

In considering Plaintiffs' motion, the court must decide the following issues: (1) whether federal or state law governs the privilege questions; (2) whether an employee-union representative privilege applies under federal common law; (3) whether the employee-union representative privilege or the attorney-client privilege bar further testimony from Ruthenberg; and (4) who should bear the expense of reconvening Ruthenberg's deposition.

**A.  Federal Common Law Governs the Privileges Asserted**.

Rule 501 of the Federal Rules of Evidence states that "[t]he privilege of a witness, person, government, State, or political subdivision thereof shall be governed by the principles of the common law as they may be interpreted by the courts of the United States in the light of reason and experience." When state law supplies the rule of decision, federal courts must apply state privilege law. Fed. R. Evid. 501. Even so, if the "principal claim" in federal court is one arising under federal law, then the federal common law of privileges applies, even if supplemental state law claims exist. *Memorial Hospital for McHenry County v. Shadur*, 664 F.2d 1058, 1061 (7th Cir. 1981). This rule arises because "it would be meaningless to hold [a] communication privileged for one set of claims and not the other." *Id.* at 1061 n.3.

Federal law governs the privileges asserted here. This is a federal question case arising under the Civil Rights Act of 1964. *See* 42 U.S.C. § 1983. Plaintiffs also bring several supplemental state law claims. Defendants argue that the sheer number of state law claims asserted by Plaintiffs indicates that the "principal claim" is not federal in nature. But

the constitutional excessive force claim is plainly the main event in this litigation and the claim on which jurisdiction hinges, and it arises under federal law. Therefore, this Court is not bound by state privilege law and must instead determine whether any privileges apply as a matter of federal law.

**B.  An Employee-Union Representative Privilege Applies in the Context of Disciplinary Proceedings.**

If a given state law privilege has not been recognized by federal law, the Court must consider whether federal common law should embrace the asserted state-law privilege. *Kodish v. Oakbrook Terrace Fire Protection Dist.*, 235 F.R.D. 447, 450–51 (N.D. Ill. 2006). No controlling authority establishes a federal privilege protecting employee-union representative communications, so the Court must decide whether to expand the federal common law of privilege to include communications protected by Illinois statute. In *Jaffee v. Redmond*, the Supreme Court explained that Rule 501 directed federal courts to "continue the evolutionary development of testimonial privileges" by interpreting privileges in light of reason and experience. 518 U.S. 1, 9 (1996). For any privilege to be added to the federal common law, the privilege must "promote . . . sufficiently important interests to outweigh the need for probative evidence." *Id.* This analysis must occur on a case-by-case basis, and take into account both the public and private interests that the privilege serves, as well as the evidentiary benefit that would result if the privilege were denied. *Id.* at 8–11.

The nature of a union agent's role suggests a need to protect some communications between union agents and union members. Illinois has codified a union agent-union member privilege as follows:

> (a) Except when required in subsection (b) of this Section, a union agent, during the agency or representative relationship or after termination of the agency or representative relationship with the bargaining unit member, shall not be compelled to disclose, in any court or to any administrative board or agency arbitration or proceeding, whether civil or criminal, any information he or she may have acquired in attending to his or her professional duties or while acting in his or her representative capacity.
>
> (b) A union agent may use or reveal information obtained during the course of fulfilling his or her professional representative duties:
> > (1) to the extent it appears necessary to prevent the commission of a crime that is likely to result in a clear, imminent risk of serious physical injury or death of another person;
> > (2) in actions, civil or criminal, against the union agent in his or her personal or official representative capacity, or against the local union or subordinate body thereof or international union or affiliated or subordinate body thereof or any agent thereof in their personal or official representative capacities;
> > (3) when required by court order; or
> > (4) when, after full disclosure has been provided, the written or oral consent of the bargaining unit member has been obtained or, if the bargaining unit member is deceased or has been adjudged incompetent by a court of competent jurisdiction, the written or oral consent of the bargaining unit member's estate.

735 Ill. Comp. Stat. 5/8-803.5. The Illinois statute thus create a relatively broad privilege, but this Court need only consider whether to adopt the privilege in the context of anticipated or ongoing disciplinary proceedings.

Union representatives like Ruthenberg may have various duties, including representing union members in disciplinary proceedings and internal investigations. In the

-5-

course of representing a union member accused of some wrongdoing, a union representative may receive confidential information. This role is not unlike that of an attorney. As with the attorney-client privilege, there is a strong interest in encouraging an employee accused of wrongdoing to communicate fully and frankly with his union representative, in order to receive accurate advice about the disciplinary process. *See U.S. Dept. of Justice v. Fed. Labor Relations Auth.*, 39 F.3d 361, 368–69 (D.C. Cir. 1994) (recognizing an employee-union representative privilege in the context of labor law). The Court therefore holds that an employee-union representative privilege will extend to communications made (1) in confidence; (2) in connection with "representative" services relating to anticipated or ongoing disciplinary proceedings; (3) between an employee and his union representative; (4) where the union representative is acting in his or her official representative capacity. *Cf. United States v. BDO Seidman , LLP*, 492 F.3d 806, 815 (7th Cir. 2007) (defining attorney-client privilege). Like the attorney-client privilege, the employee-union representative privilege is limited in that it extends only to communications, not to the underlying facts. Discussing a relevant fact with a union representative will not shield it from discovery. *See Upjohn Co. v. United States,* 449 U.S. 383, 395 (1981) (holding the attorney-client privilege protects the disclosure of communications but does not protect the client from disclosing the underlying facts.)

The expectation of confidentiality is critical to the employee-union representative privilege. Without confidentiality, union members would be hesitant to be fully forthcoming with their representatives, detrimentally impacting a union representative's ability to advise

and represent union members with questions or problems. Absent an expectation of confidentiality, there is little need to protect the communications.

The "official representative capacity" element is also of particular importance in this case, because Ruthenberg was not only a union representative but also Mandarino's fellow police officer. The privilege will not extend to conversations where Ruthenberg acted as merely a friend or collegue. The privilege can only apply when the union representative is acting in his official union role. Protecting informal conversations would extend the privilege too far, unnecessarily burdening the search for the truth. Therefore, whether an employee-union representative privilege applies must be decided using a fact-intensive analysis of the communications between the representative and union member.

In recognizing an employee-union representative privilege, this Court is also mindful that courts should be suspicious of recognizing privileges that would tend to shield evidence crucial to the legal inquiry. For instance, recognizing an open meetings privilege in a civil rights action could allow state agencies to insulate themselves against allegations of unconstitutional conduct. *Kodish*, 235 F.R.D. at 451–52. In *Kodish*, it was essential for the plaintiff to understand the reasons for his termination and other employment statistics in order to assert a discrimination claim. *Id*. at 452. The Seventh Circuit expressed a similar concern in *Memorial Hospital*, where the plaintiff needed information from hospital disciplinary proceedings in order to prove discrimination. 664 F.2d 1058, 1062–63 (7th Cir. 1981). By contrast, the types of communications protected by an employee-union representative privilege will typically involve an employee's recounting of the facts that gave

rise to disciplinary action—facts that would be discoverable at the employee's own deposition in any event.

Here, Plaintiffs can effectively pursue their claims even if the employee-union representative privilege protects Ruthenberg's conversations with Mandarino. The crucial evidence here is not a possible admission to Ruthenberg, but rather the alleged misconduct itself, as evidenced by camera footage from Mandarino's police car and other eyewitness testimony already in evidence. Because ample evidence about the incident exists aside from the potentially privileged conversations, protecting communications between Ruthenberg and Mandarino would not unduly prejudice Plaintiffs.

**C.     Ruthenberg Improperly Asserted Privilege Against Foundational Questions.**

Unfortunately, it is impossible to say whether any conversations between Mandarino and Ruthenberg were protected by the employee-union representative or attorney-client privileges. At Ruthenberg's deposition, his lawyer instructed him not to answer questions that could have established whether a foundation existed for either privilege. Indeed, Ruthenberg even refused to disclose *whether* he had employee-union representative conversations with Officer Mandarino during the relevant period. As a result, the Court is left in the dark as to whether the foundational elements of a privilege can be established.

The employee-union representative privilege was therefore improperly asserted. Like the attorney-client privilege, the employee-union representative privilege protects the contents of communications but not the fact that conversations occurred. For example, Plaintiffs should have been permitted to ask when and where conversations or communications between Mandarino and Ruthenberg occurred, how long the conversations lasted, who else was present for the conversation, and whether Ruthenberg understood himself to be acting in his official union capacity regarding each communication. Plaintiffs were also entitled to explore whether the privilege was waived, for instance by asking if Ruthenberg shared the contents of privileged communications with others. Testimony on matters like these will be critical for establishing not only the employee-union representative privilege but also the attorney-client privilege, if it turns out that an attorney was involved in any conversations that Mandarino had with Ruthenberg. Therefore, it is necessary to compel further testimony from Ruthenberg to establish which communications, if any, will be protected from discovery.

**D.      Ruthenberg's Deposition Shall Reconvene at His or His Counsel's Expense.**

Because the Court grants Plaintiffs' motion to compel, the question arises which party should bear the costs of the deposition. Defendants argue that awarding expenses would be unjust considering that the applicability of the employee-union representative privilege is a novel issue. But regardless of novelty, Ruthenberg's assertion of privilege was plainly premature. Ruthenberg withheld the information necessary to determine if a privilege applies, by refusing to answer foundational questions. Because he prematurely asserted privilege, the parties are now faced with yet another deposition at which Ruthenberg will likely assert

privilege. Ruthenberg owns primary responsibility for this state of affairs. Rule 37(a)(5)(A) actually dictates that Ruthenberg should pay all of Plaintiffs' expenses associated with this motion, including attorney's fees, unless his nondisclosure was substantially justified or other circumstances make an award of expenses unjust. The Court finds that ordering a third-party witness to pay attorney's fees would be unjust under these circumstances, but that an award of the going-forward expenses is appropriate. Ruthenberg shall therefore bear the court reporter costs (but not Plaintiffs' attorney's fees) associated with the second deposition.

### III. CONCLUSION

**For the reasons set forth in this opinion, the Court grants Plaintiffs' motion to compel further deposition testimony from Ryan Ruthenberg. Ruthenberg shall bear the court reporter costs associated with reconvening his deposition. Ruthenberg and Defendants shall permit Plaintiffs to explore the factual bases for any privileges asserted.**

**SO ORDERED THIS 15th DAY OF AUGUST, 2011**.

_____
**MORTON DENLOW
UNITED STATES MAGISTRATE JUDGE**

**Copies Sent To:**

Jonathan I. Loevy
Arthur R. Loevy
Elizabeth N. Mazur
Pier O Petersen
Loevy & Loevy
312 North May Street
Suite 100
Chicago, IL 60607

Counsel for Plaintiffs

Ellen Kornichuk Emery
Thomas George DiCianni
Lucy B. Bednarek
Ancel, Glink, Diamond, Bush, DiCianni & Krafthefer, P.C.
140 South Dearborn Street
6th Floor
Chicago, IL 60603

Richard J. Reimer
Jerry Jack Marzullo
Keith A Karlson
Richard Michael Beuke
Richard J. Reimer & Associates, LLC
15 Spinning Wheel Road
Suite 310
Hinsdale, IL 60521

Counsel for Defendants


Tony Steven Calcaterra
The Law Offices of Steven Calcaterra & Associates P.C.
1220 Iroquois Lane
Suite 204B
Naperville, IL 60563

Counsel for Ryan Ruthenberg